## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| SAMMY LEE, derivatively on behalf of OPKO HEALTH, INC., | Case No. 1:21-cv-20885-CMA |
|      Plaintiff, | |
| v. | |
| PHILLIP FROST, ADAM LOGAL, JANE H. HSIAO, STEVEN D. RUBIN, ROBERT S. FISHEL, RICHARD M. KRASNO, RICHARD A. LERNER, JOHN A. PAGANELLI, RICHARD C. PFENNIGER, JR., and ALICE LIN-TSING YU, | |
|      Defendants, | |
| and | |
| OPKO HEALTH, INC., | |
|      Nominal Defendant. | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' VERIFIED SHAREHOLDER DERIVATIVE CONSOLIDATED AMENDED COMPLAINT, AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. P. 9(b), 12(b)(6), 23.1 and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b) ("PSLRA"), Defendants Phillip Frost, Adam Logal, Jane H. Hsiao, Steven D. Rubin, Robert S. Fishel, Richard M. Krasno, Richard A. Lerner, John A. Paganelli, Richard C. Pfenniger, Jr., and Alice Lin-Tsing Yu (the "Individual Defendants") and Nominal Defendant OPKO Health, Inc. ("OPKO" or the "Company"; together with the Individual Defendants, "Defendants") hereby move to dismiss, with prejudice, the Verified Shareholder Derivative Consolidated Amended Complaint (the "Complaint" or "Compl.") [ECF No. 61], filed by Plaintiffs Sammy Lee and Andy Yu ("Plaintiffs").

## INTRODUCTION

This lawsuit is a baseless effort to accuse OPKO of discrimination on its Board and turn it into a disclosure and fiduciary duty case. Other courts around the country have unanimously rejected these very same claims. The Complaint must be dismissed, this time with prejudice.

Plaintiffs forge ahead with their contrived claims, while ignoring the actual statements made by OPKO, and also ignoring that a corporation's decisions, including the decision to initiate litigation, should be made by the Board of Directors. Initially asserting six causes of action,[1] Plaintiffs have abandoned four of their claims, leaving just claims under Section 14(a) of the Securities and Exchange Act of 1934 ("Exchange Act"), and breach of fiduciary duty.

Plaintiffs' primary basis for this lawsuit is the purported lack of diversity in OPKO's Board and management team. Their core allegation is that the Board falsely assured the investing public in SEC filings and in corporate governance documents that it "celebrates diversity" and prides itself on its diverse staff, yet refused to appoint Black, Latinx and other minority candidates to its Board and management team. This is demonstrably false. OPKO has a Latinx member on its Board and has also appointed a number of minorities and other underrepresented demographics to its Board and management team. At least seven members of OPKO's Board and management team are women or minorities. In a desperate attempt to manufacture a claim, Plaintiffs <u>ignore</u> the actual statements made by OPKO regarding the qualities to be considered for director nominees, <u>ignore</u> the racially and gender diverse members of the Board and management, and <u>ignore</u> OPKO's Code of Conduct that prohibits employment decisions on factors like race or color. <u>Plaintiffs cannot point to one purported false or misleading statement that supports their claims</u>. Moreover, Plaintiffs cannot support their claim that Defendants have failed to make efforts to appoint Black or Latinx

---

[1] Unjust enrichment, waste, abuse of control, and gross mismanagement claims were abandoned.

candidates or have precluded such candidates.

Even if Plaintiffs could point to an actual statement by OPKO requiring the racial diversity they seek – and they cannot – courts have held that statements regarding diversity efforts by companies do not constitute a legally cognizable basis for an action under the federal securities laws. Similar lawsuits have been filed across the country; three have so far been dismissed.[2] One court has already noted that Delaware law – which applies here – <u>does not impose a fiduciary duty on the Board to maintain diversity</u>.[3] The claims asserted here suffer similar flaws to the dismissed actions, including the failure to make pre-suit demand on the board of directors, failure to adequately plead demand futility, and reliance on aspirational statements regarding a company's diversity efforts (which Plaintiffs do not even have here).

First, the Complaint should be dismissed under Fed. R. Civ. P. 23.1 because, as Plaintiffs admit, they failed to make a pre-suit demand on the Board. Yet Plaintiffs fail to plead with particularity why such a demand would have been futile.

Second, OPKO's charter exculpates the Individual Defendants to the fullest extent permitted by Delaware law, except for breach of duty of loyalty or for conduct not in good faith. Plaintiffs have failed to allege facts supporting a lack of good faith or breach of duty of loyalty.

Third, Plaintiffs' claims fail on the merits. The derivative claim under Section 14(a) fails to meet even the most basic pleading requirements, let alone the heightened standard of Rule 9(b) and the PSLRA. The Complaint does not specify any public misstatement and must be dismissed.

Fourth, statements regarding diversity efforts have been repeatedly held to be inactionable. Even if such statements had been made by OPKO (and they have not) Plaintiffs could not rely on such statements to plead a valid claim.

---

[2] *Ocegueda on behalf of Facebook v. Zuckerberg*, No. 20 CV 04444 LB, 2021 WL 1056611, at *1 (N.D. Cal. Mar. 19, 2021) ("*Facebook*") (dismissing claims of lack of diversity on the basis that plaintiff failed to make a pre-suit demand, failed to plausibly plead demand futility, and failed to "plausibly plead a materially false statement under § 14(a) primarily because the aspirational assertions [regarding diversity] in the proxy statements are non-actionable"); *Falat v. Sacks*, No. SACV201782JVSKESX, 2021 WL 1558940, at *6 (C.D. Cal. Apr. 8, 2021) ("*Monster*") (dismissing claims against Monster Beverage Corporation and its officers and directors, finding among other things, that the plaintiff did not plead demand futility with particularity). A third case against GAP, Inc., was dismissed for improper venue. *See Lee v. Fisher et al.*, Case No. 20-cv-06163-SK (N.D. Cal. April 27, 2021) (Dkt. 59).

[3] *See Monster*, 2021 WL 1558940, at *5 ("With respect to [plaintiff's] claims about racial diversity, Delaware imposes no duty to maintain diversity on a Board of Directors, and the Court declines to engage in judicial lawmaking in order to create such a duty.")

Fifth, to successfully bring a derivative lawsuit on behalf of the Company, Plaintiffs must demonstrate harm to the Company. Because Plaintiffs have failed to allege any cognizable harm to OPKO, the Complaint must be dismissed.

Finally, even though previously admonished by the Court on this very deficiency, the Complaint is <u>still</u> a shotgun pleading with the second claim incorporating *all* previous allegations in the Complaint. The Complaint is subject to dismissal on this basis alone.

## FACTUAL BACKGROUND

### A.     OPKO and Its Board of Directors

*OPKO's Business.* OPKO, a Delaware corporation, has its principal offices at 4400 Biscayne Blvd., Miami, Florida 33137. Compl. ¶ 18. OPKO's shares trade on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "OPK." OPKO is a diversified healthcare company engaged in the diagnostics and pharmaceuticals business. *Id*. at ¶ 2. BioReference Laboratories, Inc. ("BioReference") is a wholly-owned subsidiary. *Id*.

*OPKO's Board of Directors.* OPKO's current Board is made up of twelve members, comprising four officer directors: Dr. Phillip Frost (Chief Executive Officer and Chairman), Jane Hsiao (Chief Technical Officer and Vice Chairman), Steven D. Rubin (Executive Vice President, Administration), and Jon R. Cohen (Senior Vice President, OPKO; Executive Chairman, BioReference); and eight outside, non-employee directors: Richard A. Lerner, John A. Paganelli, Richard C. Pfenniger, Jr., Alice Lin-Tsing Yu, Richard M. Krasno, Robert S. Fishel, Roger J. Medel, and Prem A. Lachman.[4] *Id*. at ¶¶ 19-48. Section 9.1 of OPKO's Charter exculpates its directors from personal liability for monetary damages for breach of fiduciary duty, except breach of the duty of loyalty, or for acts or omissions not in good faith. 8 Del. C. § 102(b)(7).

Plaintiffs claim that the Individual Defendants caused the Company to make false and misleading statements in OPKO's 2018, 2019, and 2020 proxy statements (the "Proxies")[5] by failing to disclose: (1) their purported refusal to appoint Black, Latinx or other underrepresented minorities to the Board or the management team (the "Alleged Misconduct"); (2) that the Company does not have term limits due to a desire to prevent minorities from membership on the Board;

---

[4] Messrs. Cohen, Medel, and Lachman are not named in this action.

[5] The Proxies are attached as **Exhibits 1, 2 and 3**. It is well-settled that on a motion to dismiss a securities action, the Court is free to consider any public records and documents, including SEC filings, that are central to a plaintiff's claims or referred to in the complaint. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1287 (11th Cir. 1999).

(3) that Ernst and Young LLP ("E&Y"), the Company's independent auditor, was neither independent nor effective at ensuring the adequacy of the Company's internal controls; and (4) that the Company failed to maintain adequate internal controls. Compl. at ¶ 13. Plaintiffs failed to make a pre-suit demand on the Board, claiming that demand is excused because each of the Individual Defendants purportedly faces a substantial likelihood of liability, because the Alleged Misconduct was an "unlawful business strategy" and "not a valid exercise of business judgment," and because the Individual Defendants' have a relationship with Dr. Frost. *Id*. at ¶¶ 124-87.

### B.     This Derivative Action

On March 5, 2021, Plaintiff Sammy Lee filed a derivative action against the Defendants [ECF No. 1], and on March 11, 2021, Plaintiff Andy Yu filed an identical complaint (Case No. 1:21-cv-20972-CMA). On March 19, 2021, this Court consolidated the two derivative actions [ECF No. 16]. At an April 15, 2021 scheduling conference, the Court directed Plaintiffs to amend the complaint to correct its shotgun pleading. On April 19, 2021, Plaintiffs filed this amended Complaint [ECF No. 61], which failed to correct the shotgun pleading.

### 1.     Plaintiffs Baselessly Assert That the Board Failed to Create Meaningful Diversity and Violated Anti-Discrimination Laws

Plaintiffs' entire theory rests on allegations that OPKO falsely assured investors in SEC filings and corporate governance documents that "diversity" would be "a quality considered and accounted for." Compl. ¶ 3. But the meaning of "diversity" espoused by Plaintiffs does not appear in OPKO's statements. A simple review of the purported false and misleading statements highlighted in the three proxy statements destroys Plaintiffs' contrived interpretation. *See id*. at ¶¶ 96, 104, 112. Nowhere does OPKO actually say that it will consider racial diversity (or race or color), in making employment or board decisions; indeed, its Code of Conduct affirms that it will not do so. *See*  https://www.opko.com/investors/corporate-governance/governance-documents (OPKO Code of Conduct and Business Ethics) at ¶ 5.

In any event, Plaintiffs' claim that OPKO does not support or encourage diversity on its Board and management team is demonstrably false. In addition to having a Latinx member on its Board, several women and minorities serve (or have served) on OPKO's Board and executive leadership: Patricia Sandler was appointed as the National Sales Director for OPKO's Renal Division in July 2019 (https://www.opko.com/investors/corporate-governance/management-team); Jane Pine Wood oversees BioReference's legal department (*id*); Tony Cruz serves on the Company's management team (*id*); Defendant Jane Hsiao has served as director and as the Company's Chief Technical Officer and Vice-Chairman since early 2007 (Compl. ¶ 25); and

Defendant Alice Yu has served as OPKO's director since April 2009. *Id*. ¶ 46. Non-party Roger J. Medel is a director (https://www.opko.com/investors/corporate-governance/board-of-directors). Non-party Anthony J. Japour served as a director from January 2020 until June 2020. *See Exhibit* 3, at pp. 6, 23. And, most recently, OPKO appointed non-party Prem A. Lachman as a director. *See* Form 8-K filed on March 1, 2021, attached as **Exhibit 4**. Finally, for almost six years, OPKO's General Counsel was a woman.[6]

In addition, OPKO's public filings illustrate the Company's commitment to inclusion and diversity. As publicly disclosed, one of OPKO's strategic business goals is to recognize and serve diverse communities through its subsidiary – BioReference. *See* OPKO's 2020 Form 10-K for the fiscal year ended December 31, 2020, attached as **Exhibit 5,** at pp. 26-27. OPKO also disclosed that it recognizes and values the importance of diversity and inclusion in the workplace. *Id*.[7]

Ignoring OPKO's demonstrated dedication to diversity, the Complaint claims that there is a lack of meaningful diversity at the Company. Compl. ¶ 86. Plaintiffs allege that the Individual Defendants have caused OPKO "to violate [unidentified] federal and state laws regarding diversity and discrimination…." *Id*. at ¶ 7. Yet Plaintiffs do not allege that any court has found that OPKO, or any of the Individual Defendants, has ever violated any state or federal anti-discrimination laws.

Instead, Plaintiffs rely on unproven allegations in one small lawsuit involving BioReference that settled for $18,000. Plaintiffs allege that "during the Relevant Period, at least one Black employee initiated a lawsuit alleging, among other things, race discrimination by…BioReference." (the "BioReference Lawsuit"). *Id*. at ¶ 3, 78. A copy of the amended complaint in the BioReference Lawsuit is attached as **Exhibit 6.** In that case, plaintiff alleged that her supervisor disliked her allegedly because of her race and caused her termination (Exhibit 6, pp. 2-6), yet she acknowledged that she was ultimately terminated due to her failure to disclose criminal associations that were discovered during a background check. *Id*. at pp. 4-5. The BioReference Lawsuit did not challenge any policies of BioReference (let alone OPKO) as

---

[6] https://www.bloomberg.com/profile/person/16935010 (last visited May 24, 2021.)

[7] Under "*Inclusion and Diversity*," the Company disclosed as follows: "We recognize the importance of and value diversity and inclusion in our workplace. As such, we have celebrated our diversity through employee and social media announcements in conjunction with company newsletters and employee events. We welcome discussions about our differences, embracing them and learning from them to move forward as a stronger, more productive organization…. We are in a unique position where our workforce is already quite diverse and according to feedback from employee surveys, there is great pride and respect shared among our teams."

58134747;17

discriminatory.[8] That case has nothing to do with Plaintiffs' allegations here. In any event, the BioReference Lawsuit was settled for only $18,000 (*see* letter motion attached as **Exhibit 8**, at p. 1), and was dismissed with prejudice. *See* order of dismissal attached as **Exhibit 9**.

Nevertheless, citing only the now-dismissed $18,000 BioReference Lawsuit, Plaintiffs argue that OPKO has somehow lost and expended, and will somehow lose and expend, "many millions of dollars." Compl. ¶¶ 117-20. Plaintiffs allege that such expenditures include "legal fees and other costs of defending" lawsuits related to the alleged discriminatory misconduct including the BioReference Lawsuit, purported loss of profits, loss of talent, fees paid to E&Y for allegedly inadequate services and a "'liar's discount' that will plague the Company's stock in the future due to the alleged breaches of fiduciary duties and violations of the Exchange Act." *Id.*

### 2. Plaintiffs Baselessly Claim That the Board Made False and Misleading Statements in the Proxies

Plaintiffs allege that the Individual Defendants caused false and misleading statements to be issued in the Proxies. Compl. ¶¶ 4, 13, 95, 97, 99-100, 103, 105, 107-108, 111, 113, 115-116. Plaintiffs challenge statements regarding the Company's adoption of a Code of Conduct for its employees, officers and directors, as well as statements concerning the qualities that OPKO's Corporate Governance and Nominating Committee take into account when considering director nominees. Specifically, Plaintiffs claim that the false and misleading statements are:

1. "[T]he Company 'has adopted a Code of Business Conduct and Ethics that applies to all employees, officers, and directors of the Company…'" *Id.* at ¶¶ 95, 103, 111.

Plaintiffs claim that this statement was false and misleading and OPKO's Code of Conduct and Business Ethics was not followed because OPKO allegedly failed to nominate or hire Black or Latinx individuals. Plaintiffs make this claim notwithstanding that one of OPKO's directors is in fact Latinx, and notwithstanding that the Code of Conduct and Business Ethics specifically prohibits employment decision on the basis of race or color.

2. "'[T]he Board believes it is important for the Board to have diversity of knowledge base, professional experience and skills, and the Corporate Governance and Nominating Committee takes these qualities into account when considering director nominees for recommendation to the Board.'" *Id.* at ¶¶ 96, 104, 112.

---

[8] Even with the court's liberality when reviewing a *pro se* complaint, the initial complaint in the BioReference Lawsuit was dismissed for, among other reasons, the plaintiff's failure to show that the alleged adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See* Recommendation of the Magistrate Judge in the BioReference Lawsuit, attached as **Exhibit 7**, at p. 6.

Plaintiffs claim that this statement was false and misleading because "diversity" would require the hiring of Black, Latinx or other underrepresented ethnic minority members. Plaintiffs make this claim even though this statement makes no reference to racial/ethnic diversity.

Neither of these statements are false or misleading. OPKO's Board consists of individuals from diverse professional backgrounds and Plaintiffs concede this much in the Complaint. *Id*. at ¶¶ 19-48. And, OPKO has a Latinx and several other ethnic minority directors. Even so, Plaintiffs summarily conclude that the Proxies failed to disclose (1) the Alleged Misconduct; (2) the Company's lack of term limits in order to "keep Black, Latinx, and other underrepresented individuals off of the Board"; (3) that E&Y was neither independent nor effective at ensuring the adequacy of the Company's internal controls; and (4) the Company's alleged failure to maintain adequate internal controls. *Id*. at ¶¶ 100, 108, 116.

### 3.   Plaintiffs' Causes of Action and the Relief Sought

The Complaint asserts two causes of action purportedly on behalf of OPKO: (1) breach of fiduciary duty, and (2) violations of Section 14(a) of the Exchange Act based on the Proxies. In addition to damages, Plaintiffs seek unprecedented relief that this Court would be powerless to order, including to compel Defendants to put up for vote seven "corporate governance policies," including proposals requiring a 30% reduction of compensation for executives, and replacing E&Y as OPKO's independent auditor. Plaintiffs' Complaint is insufficient to wrest control of the Company's operations from OPKO's Board, and the Complaint must be dismissed.

## ARGUMENT

## I.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO PLEAD THAT DEMAND IS EXCUSED

### A.   Plaintiffs Cannot Skirt Rule 23.1's Demand and Pleading Requirements

Federal Rule of Civil Procedure 23.1 requires that a plaintiff bringing a derivative action "state with particularity" (i) that she has demanded that the board file suit asserting the corporation's rights or (ii) "the reasons for not . . . making the effort" to make such demand on the board. At least two courts reiterated this standard in dismissing recent cases identical to Plaintiffs' claims here. *See Facebook*, 2021 WL 1056611, at *5; *Monster*, 2021 WL 1558940, at *4.

The law of the state of incorporation – in this case, Delaware – governs the substantive rules used to determine whether a plaintiff has satisfied this heightened pleading standard. *Silver Crown Inv., LLC v. Team Real Estate Mgmt.*, 349 F. Supp. 3d 1316, 1327 n.2 (S.D. Fla. 2018); *Butorin v. Blount*, No. 15-283-LPS, 2018 WL 4700217, at *4 (D. Del. Sept. 30, 2018). Under Delaware law, "[f]ailure to make a demand or to show why a demand would be futile means

dismissal." *McDowell v. Bracken*, 794 F. App'x. 910, 913 (11th Cir. 2019) (applying Delaware law and Fed. R. Civ. P. 23.1); *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048-49 (Del. 2004). This exacting demand requirement is founded upon the cardinal precept of corporate law that "directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

To excuse demand, the Complaint must plead with particularity facts showing that a demand on the Board would have been futile. *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 120 (Del. Ch. 2009). "The purpose of the demand requirement is not to insulate defendants from liability; rather, the demand requirement and the strict requirements of factual particularity under Rule 23.1 'exist[] to preserve the primacy of board decisionmaking regarding legal claims belonging to the corporation.'" *Id.* Furthermore, to "comply with Rule 23.1, a plaintiff must make particularized allegations against each named defendant; he may not rely on the 'group' accusation mode of pleading demand futility." *Owens v. Mayleben*, 2020 WL 748023, at *6 (Del. Ch. Feb. 13, 2020). Plaintiffs must particularly allege that each member of the Board either (i) faces a "substantial likelihood of personal liability," or (ii) lacks independence from an interested director. *Guttman v. Huang*, 823 A.2d 492, 502-04 (Del. Ch. 2003).

### B.     No Individual Defendant Faces a Substantial Likelihood of Liability

Plaintiffs' primary argument in favor of demand futility is that the Individual Defendants face a substantial likelihood of liability, as such any demand would be futile and is excused. Compl. ¶¶ 124. That argument fails: "Delaware imposes no duty to maintain diversity on a Board of Directors…[a]s such,…there is no substantial risk of liability for [] directors as it relates to [] allegations regarding lack of diversity…." *Monster*, 2021 WL 1558940, at *5.

### 1.     Plaintiffs Fail to Allege Sufficient Facts to Avoid Operation of the Exculpatory Clause in OPKO's Charter

Plaintiffs' Complaint relies on the same types of allegations recently rejected by the courts in identical lawsuits challenging the diversity efforts of Facebook's and Monster's boards. The *Facebook* plaintiff alleged that proxy statements omitted certain "facts" that would have been material and contradicted the assertions made, including that Facebook's board was not committed to diversity, and never wanted minority candidates. *Facebook*, 2021 WL 1056611, at *7. The court held that such allegations were not "facts" but "conclusions." "And given Facebook's exculpatory clause, the plaintiff did not plead particularized facts that the directors had actual or constructive knowledge that their conduct was legally improper." *Id.* (citations omitted).

Similarly, in *Monster*, the court agreed with Monster that the plaintiff could not show a substantial risk of personal liability sufficient to excuse demand because, among other things, "Monster's Certificate of Incorporation exculpates the Director[s] [] from personal liability 'to the fullest extent permitted' by Delaware law." *Monster*, 2021 WL 1558940, at *5. And the plaintiff failed to allege facts plausibly suggesting that the directors acted in bad faith or engaged in intentional misconduct or knowing violation of the law. *Id*. (citation omitted).

Similar to *Facebook* and *Monster*, Plaintiffs here cannot establish a substantial likelihood of liability against the Individual Defendants because OPKO's charter broadly limits director liability for claims for monetary damages such as those alleged in the Complaint.[9] Section 9.1 of OPKO's charter, as explicitly authorized by Delaware General Corporation Law § 102(b)(7), provides in relevant part:

> Exculpation. To the fullest extent permitted by the DGCL, a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director except for liability (a) for any breach of the director's duty of loyalty to the Corporation or its stockholders, [or] (b) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law.

Based upon the plain language of this provision, Plaintiffs' claims for monetary damages against the Individual Defendants all fail. The exceptions for claims based on fraudulent, illegal, or bad faith conduct do not apply because Plaintiffs do not plead particularized facts that demonstrate that the Individual Defendants acted with scienter, *i.e.*, that they had actual or constructive knowledge that their conduct was legally improper. *In re Intel Corp. Deriv. Litig.*, 621 F. Supp. 2d 165, 174 (D. Del. 2009) (citation omitted); *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008); *see also Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006) (discussing *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996), and explaining that "imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations."); *see also Facebook*, 2021 WL 1056611, at *6-7.

Like the *Facebook* plaintiff, Plaintiffs fail to allege any particularized facts to support allegations about the Individual Defendants' knowledge of the Alleged Misconduct. Instead, they generally allege that "[i]n complete abdication of their fiduciary duties, the [Individual Defendants] either knowingly or recklessly caused the Company to engage in the discrimination."

---

[9] Facebook's exculpation clause is identical to OPKO's exculpation clause. *See Facebook*, 2021 WL 1056611, at *2.

Compl. ¶ 127. But Plaintiffs have not, and cannot, allege specific facts showing that a majority of the Board knew they were not discharging their fiduciary duties with respect to the Proxies that Plaintiffs claim to be false and misleading, or knew or recklessly failed to know that their conduct was in any way improper. Pursuant to OPKO's exculpation provision, the Individual Defendants cannot be liable for any of Plaintiffs' claims, defeating Plaintiffs' demand futility argument.

### 2.     No Facts Support that a Majority of the Board Knew of Misconduct

Even assuming there was any actionable misconduct here – and there is not – Plaintiffs have not alleged sufficient facts to demonstrate that the Individual Defendants participated in, or even knew about any discrimination in OPKO's director nomination process (which is routinely ratified by the Company's shareholders). There is no discrimination. OPKO has a Latinx director, and several other minorities on its Board. None of the Individual Defendants are alleged to have actively prevented the appointment of "Black" and/or "Latinx" individuals as directors of OPKO.

Further, Delaware law has been clear for decades that the Individual Defendants do not lose their disinterested status merely because they have been named in this lawsuit. "This bootstrap argument has been made to and dismissed by other courts. . . . Its acceptance would effectively abrogate Rule 23.1 and weaken the managerial power of directors." *Aronson*, 473 A.2d at 818 (internal citations omitted); *see also Seinfeld v. Slager*, No. 6462-VCG, 2012 WL 2501105, at *2 (Del. Ch. June 29, 2012) ("A director is not interested merely because he is named as a defendant in a suit.") Thus, "the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors." *Aronson*, 473 A.2d at 815.

In fact, other than the non-controversial assertion that the Individual Defendants are directors of OPKO, not a single fact is asserted supporting the baseless allegation that the Individual Defendants caused OPKO to participate in any wrongdoing. As such, they cannot face any risk of liability – let alone a substantial likelihood of liability – and their independence is not impugned. Plaintiffs have no demand futility argument.

### C.     Plaintiffs Fail to Establish that a Majority of the Board Lacks the Independence Necessary to Consider a Demand

In addition to being unable to establish a substantial likelihood of liability against the Individual Defendants, Plaintiffs also fail to demonstrate the Individual Defendants' lack of independence necessary to consider a demand. Plaintiffs' allegations here are again similar to arguments made by the *Facebook* plaintiff and rejected by that court. To buttress her demand futility argument, the *Facebook* plaintiff alleged that CEO Zuckerberg and COO Sandberg cannot

exercise independent and disinterested judgment because "they are Facebook executives." *Facebook*, 2021 WL 1056611, at \*7. The court held that the allegation failed to sufficiently plead that they are interested: "'The mere fact that Zuckerberg is a controlling shareholder is not enough to establish his lack of independence because that would eviscerate the disinterested prong of the demand futility text and would find a director involved in the day-to-day running of a company to be 'interested' under any set of facts.'" *Id*. (citation omitted). The same reasoning applies here. The Complaint fails to allege any particular facts showing that a majority of the twelve OPKO directors are personally "interested" in and incapable of objectively considering a demand.

Instead, Plaintiffs' "futility" allegations consist of boilerplate contentions that the Individual Defendants engaged in a "scheme . . . which caused the Company to make false and misleading statements" in the Proxies, such that the Board failed to disclose "upon information and belief, [that] the Company does not have term limits due to a desire to keep Black, Latinx, and other underrepresented individuals off of the Board," that "the Company failed to maintain adequate internal controls," and that "the Board made and/or allowed the Company to engage in the schemes…." Compl. ¶¶ 125, 126, 127, 128. But, such conclusory allegations do not contain particularized facts undermining the independence of a majority of the directors and are insufficient to establish demand futility under Rule 23.1. *See Facebook*, 2021 WL 1056611, at \*7.

### 1. Allegations Regarding Close Personal and Professional Relationships Are Insufficient to Establish a Lack of Independence

To try to support their demand futility argument, Plaintiffs allege that several of the Individual Defendants are "entwined" with Dr. Frost through "various connections and transactions." Compl. ¶¶ 131-74. For example, Defendant Krasno, director since February 2017, is alleged to be "beholden" to Dr. Frost due to their "extensive business relationship," personal friendship, and his status as a director at other companies with ties to Dr. Frost. *Id.* at ¶¶ 151-53. The same allegations are made as to Defendants Lerner and Pfenniger. *Id*. at ¶¶ 154-59, 163-66.

This exact argument was rejected in *Facebook*. There, the plaintiff argued that Facebook's COO was "not independent of [the CEO,] Zuckerberg." The court held that "Mr. Zuckerberg's status [as a controlling shareholder] 'does not automatically mean that the other [directors] are incapable of exercising judgment….'" *Facebook*, 2021 WL 1056611, at \*7. Numerous cases have similarly held that allegations of longstanding professional and personal relationships between or among directors and control persons are insufficient to establish demand futility under Delaware law. *McDowell v. Bracken*, 317 F. Supp. 3d 1162, 1173-74, *aff'd*, 794 F. App'x 910 (11th Cir. 2019); *see also Beam*, 845 A.2d at 1051 (allegations that Stewart and the other directors "moved

in the same social circles, attended the same weddings, developed business relationships before joining the board, and described each other as 'friends,' even when coupled with Stewart's 94% voting power, were insufficient to rebut presumption of director independence"); *In re Walt Disney Co. Deriv. Litig.*, 731 A.2d 342, 355 (Del. Ch. 1998), *aff'd in part, rev'd in part and remanded sub nom. Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ("The fact that [the Chairman/CEO] has a longstanding personal and business ties . . . cannot overcome the presumption of independence that all directors . . . are afforded.").

Additionally, under Delaware law, an allegation of a collateral business relationship, standing alone, is insufficient to raise a reasonable doubt about a director's independence. *Beam*, 845 A.2d at 1050. Although some of the Individual Defendants' careers may have overlapped at times, Plaintiffs fail to particularize allegations showing any <u>actual bias</u> because of their positions. At best, even if Plaintiffs are deemed to have alleged sufficient facts to create a reasonable doubt as to whether defendants Frost, Hsiao, and Rubin are independent for purposes of a demand futility analysis, Plaintiffs could have – but failed to – direct their pre-suit demand to <u>nine other directors</u>.[10] Plaintiffs fail to support their demand futility claim subjecting their Complaint to dismissal under Rule 23.1.

In summary, Plaintiffs have not, and cannot, allege facts sufficient to show that a majority of OPKO's board lacked the independence sufficient to fairly evaluate a pre-suit demand. As such, the Complaint must be dismissed with prejudice.

### 2.   Plaintiffs Fail to Establish That Any Challenged Board Decision Was Not a Reasonable Exercise of Business Judgment

Plaintiffs also allege in cursory fashion that demand is excused because the Individual Defendants' conduct did not amount to a valid exercise of "business judgment." Compl. ¶¶ 126, 183, 203. This attempt to invoke the "*Aronson* standard" for demand futility fails. *Aronson*, 473 A.2d at 814 (Del. 1984). *Aronson* applies to a shareholder's challenge to a specific board decision and allows a plaintiff to show *either* that the Board is interested and not independent *or* that a challenged decision was not an exercise of reasonable business judgment. Plaintiffs must therefore identify a *specific* Board decision in order to invoke the *Aronson* standard's business judgment

---

[10] For the same reasons, Plaintiffs' allegations that four of the Individual Defendants were employed at IVAX at various times from 1987 to 2006 are inadequate to establish demand futility. *Beam*, 845 A.2d at 1050. Even if such business relationships were evidence of lack of independence, Plaintiffs made such allegations with respect to only four of OPKO's twelve directors, not a majority. Compl. ¶¶ 172 (i)-(iv).

prong. Plaintiffs have not, and cannot, identify any such decision by OPKO's Board. As such, their vague allegations fail to show any board transaction was not a valid exercise of business judgment.

## II. PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY OR VIOLATION OF SECTION 14(a)

In addition to failing to establish that demand should be excused under Rule 23.1, Plaintiffs fail to state any claim against the Individual Defendants, and the Complaint must be dismissed.

### A. Plaintiffs Fail to State A Fiduciary Duty Claim

Delaware directors owe only two fiduciary duties: care and loyalty. *See, e.g., In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 745 n.400 (Del. Ch. 2005) ("The Delaware Supreme Court has been clear that outside the recognized fiduciary duties of care and loyalty (and perhaps good faith), there are no other fiduciary duties."). Delaware law protects its directors and officers in carrying out these duties by, among other things, the business judgment rule and statutory limitations on liability. *See, e.g., In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d at 125. The business judgment rule is a powerful "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Aronson*, 473 A.2d at 812.

In addition, as noted previously, OPKO's charter exculpates the Individual Defendants from liability for breaches of fiduciary duty "[t]o the fullest extent permitted by [Delaware law]." (*see supra.,* Section I.B.1.). Relevant here, 8 Del. C. § 102(b)(7) allows OPKO to "exculpate directors from monetary liability for a breach of the duty of care, but not for conduct that is not in good faith or [is] a breach of the duty of loyalty." *Stone*, 911 A.2d at 367. Thus, the Individual Defendants may be liable only for breaches of the duty of loyalty, acts in bad faith, intentional misconduct, or knowing violation of the law. *See Wood*, 953 A.2d at 141. As such, negligent or even reckless conduct is insufficient. Plaintiffs' conclusory allegations do not come anywhere near showing disloyalty, bad faith, intentional misconduct, or knowing violation of the law.

Plaintiffs claim that the Individual Defendants breached their fiduciary duties by (1) causing OPKO to violate unspecified federal and state laws regarding diversity and discrimination and refusing to nominate, appoint, and/or hire Black or Latinx individuals or other underrepresented minorities to the Board or Black individuals to the executive management team, Compl. ¶¶ 7, 9, 77, 197, 198; (2) failing to maintain adequate system of oversight, disclosure controls and procedures, and internal controls, *id*. at ¶¶ 9, 198, 200; and (3) continuing to appoint E&Y as independent auditor "despite E&Y failing to properly audit and assess the Company's inadequate internal controls." *Id*. at ¶¶ 12, 198, 201, 202.

58134747;17

These are classic "*Caremark* claims," where the plaintiff alleges that a company's directors breached their fiduciary duties by "allow[ing] a situation to develop and continue which exposed the corporation to enormous legal liability and that in so doing they violated a duty to be active monitors of corporate performance." *Caremark*, 698 A.2d at 959, 967. To properly plead a *Caremark* claim, a plaintiff must allege, "(1) that the directors knew or (2) should have known that violations of law were occurring and, in either event, (3) that the directors took no steps in a good faith effort to prevent or remedy that situation, and (4) that such failure proximately resulted in the losses complained of." *Caremark*, 698 A.2d at 971. Plaintiffs must demonstrate that the Individual Defendants "consciously disregarded" their duty to address misconduct, and that the Board's "bad faith" proximately caused a "corporate trauma." *Melbourne Mun. Firefighters' Pension Tr. Fund v. Jacobs*, No. 10872-VCMR, 2016 WL 4076369, at *8 (Del. Ch. Aug. 1, 2016); *see also Walther v. ITT Educ. Servs., Inc.*, No. CV 8273-MA, 2015 WL 545331, at *15 (Del. Ch. Feb. 10, 2015), *adopted*, (Del. Ch. Feb. 25, 2015) ("One of the required elements of a *Caremark* claim is loss or harm to the corporation."). Delaware courts describe a "*Caremark* claim" as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win judgment." *Stone*, 911 A.2d at 372. Plaintiffs' Complaint does not even come close to meeting this stringent standard.[11]

### 1.   Plaintiffs Fail to Plead Harm to OPKO

Plaintiffs' breach of fiduciary duty claim fails at the outset because the Complaint does not plead any cognizable harm or "corporate trauma" to OPKO. *Melbourne*, 2016 WL 4076369, at *8. In Plaintiffs' lengthy Complaint, the only non-speculative harm Plaintiffs allege is the cost of defending against lawsuits, Compl. ¶ 118, yet the only lawsuit mentioned in the Complaint is the BioReference Lawsuit which settled for a meager $18,000.

The BioReference Lawsuit was not filed against OPKO. Although BioReference is a subsidiary of OPKO, it is a separate and distinct entity. Plaintiffs have not alleged particularized facts showing any purported harm to OPKO from a lawsuit filed against BioReference. Further, the BioReference Lawsuit did not include allegations on the topic of OPKO's Board discriminating

---

[11] Further, *Caremark* allows a plaintiff to plead that "the directors utterly failed to implement any reporting or information system or controls." *Stone*, 911 A.2d at 370. Plaintiffs cannot meet that standard either. The Complaint *concedes* that OPKO had numerous relevant internal policies and controls at all relevant time. *See* Compl. ¶¶ 68-73 (discussing the role of the different committees and the different internal controls in place, including those of the Audit Committee.); *see In re Polycom, Inc.*, 78 F. Supp. 3d 1006, 1015 (N.D. Cal. 2015) (rejecting allegations of "inadequate" oversight where complaint conceded "existence of [the] Audit Committee, the Committee's duties, and [the company's] Code of Business Ethics and Conduct").

against minority candidates. While the lawsuit vaguely referenced discrimination, plaintiff there mostly alleged that her supervisor disliked her and caused her to be terminated. There are no allegations in the BioReference Lawsuit establishing widespread discrimination in BioReference's corporate policies, let alone in that of OPKO. Plaintiffs' failure to plead any harm to OPKO based on the alleged misconduct in a small subsidiary action is an independent ground for dismissal.[12]

### 2. Plaintiffs Do Not Adequately Allege That the Individual Defendants Consciously Failed to Monitor OPKO's Operations

The Complaint also fails to plead that the Individual Defendants consciously failed to monitor OPKO's operations. To successfully plead a *Caremark* claim based on a failure to monitor, Plaintiffs must plead "that there were so-called 'red flags' that put the directors on notice of problems with their systems, but which were consciously disregarded." *In re Gen. Motors Co. Deriv. Litig.*, C.A. No. 9627-VCG, 2015 WL 3958724, at *16 (Del. Ch. June 26, 2015).

Lawsuits against a particular company (let alone insignificant lawsuits like the BioReference Lawsuit) do not constitute "red flags" that a company engaged in misconduct. *See Marvin H. Maurras Revocable Tr. v. Bronfman*, No. 12 C 3395, 2013 WL 5348357, at *6 (N.D. Ill. Sept. 24, 2013) (holding that lawsuits were not red flags). Moreover, the BioReference Lawsuit did not involve allegations about OPKO's Board discriminating against minority director and management team candidates. Such an action would never constitute a red flag about the conduct alleged in the Complaint. *See In re Oracle Corp. Deriv. Litig.*, No. C 10-3392 RS, 2011 WL 5444262, at *6 (N.D. Cal. Nov. 9, 2011) (director awareness of similar issues in unrelated matters insufficient to show knowledge or reckless disregard of the wrongdoing alleged in the complaint).

### 3. Plaintiffs Fail to Plead a Breach of the Duty of Loyalty

To the extent Plaintiffs assert that their breach of fiduciary duty claims rests on alleged breaches of the duty of loyalty (rather than a breach of the duty of oversight), that theory also fails. To plead a breach of the duty of loyalty, Plaintiffs must show that directors acted in bad faith. *See Stone*, 911 A.2d at 370. That requires that the "directors fail[ed] to act in the face of a known duty

---

[12] The Complaint's allegation that OPKO has suffered reputational harm is also insufficient as it is entirely speculative. *See In re Symbol Techs. Sec. Litig.*, 762 F. Supp. 510, 517 (E.D.N.Y. 1991) ("boilerplate language" that "defendants' acts have undermined [the company's] credibility in the securities market and have jeopardized the continued public acceptance and marketability of its stock to the injury of the Company" was "not sufficient to withstand a motion to dismiss").

58134747;17

to act, thereby demonstrating a conscious disregard for their responsibilities." *Id*. None of Plaintiffs' conclusory allegations implicates any bad faith.[13]

### B.     Plaintiffs Fail to State a Claim for Violation of Section 14(a)

Section 14(a) requires a plaintiff to allege that a proxy statement contained a material misrepresentation or omitted a material fact necessary to make the affirmative statements in the proxy not false or misleading. 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9(a). *Facebook*, 2021 WL 1056611, at *9. Securities claims are subject to the pleadings standards of the PSLRA. The PSLRA requires plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, … [to] state with particularity all facts on which that belief is formed." *Id*. §78u-4(b)(1). And where, as here, a plaintiff's federal securities claim sounds in fraud, the heightened pleading standards of Rule 9(b) also apply. *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000).[14] The Complaint must include specific facts giving rise to a "strong inference that the defendants acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A); *see In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000). A plaintiff must plead particularized facts demonstrating that the allegedly false or misleading portion of the proxy statement directly authorized and caused the corporate action that led to the harm alleged. *In re Paypal Holdings, Inc. S'holder Derivative Litig.*, No. 17-CV-00162-RS, 2018 WL 466527, at *4 (N.D. Cal. Jan. 18, 2018). To survive a motion to dismiss, a "complaint must

---

[13] For example, Plaintiffs' conclusory allegations that in breach of their fiduciary duties, the Individual Defendants engaged in, or permitted and/or allowed the Company to engage in, the Alleged Misconduct (Compl. ¶ 197) does not implicate bad faith because Plaintiffs have made no particularized allegations suggesting that the Individual Defendants actively and consciously prevented minorities on the Board, neither have they made an argument showing that the Board did not actively seek qualified minorities to occupy positions on the Board. Moreover, under Delaware law, there is "no duty to maintain diversity on a Board of Directors." *See Monster*, 2021 WL 1558940, at *5.

[14] Plaintiffs concede that the basis for their fiduciary breach and the Section 14(a) claims are identical. Compl. ¶ 13, 206. In these allegations, Plaintiffs claim that the Individual Defendants *knew* that statements in OPKO's Proxies were false, but intentionally caused the statements to issue. *See e.g.*, Compl. ¶¶ 54, 125, 127, 128, 202. Because Plaintiffs allege a single course of conduct "grounded in alleged fraudulent conduct," the Complaint must meet the more demanding pleading standards of Rule 9(b) and the PSLRA "even if [Plaintiffs] disclaim reliance on a fraud theory" as they attempt to do here. *In re Columbia Pipeline, Inc.*, 405 F. Supp. 3d 494, 506 (S.D.N.Y. 2019); *see also Facebook*, 2021 WL 1056611, at *9 (holding that plaintiff's allegations were based on fraud regardless of the fact that the plaintiff "limited her claim to negligence in her opposition.")

58134747;17

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). But "labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Plaintiffs allege that the Individual Defendants violated Section 14(a) by causing OPKO to issue the Proxies containing material omissions and misstatements. Compl. ¶¶ 93-116. Plaintiffs challenge statements and/or omissions related to (1) diversity on the Company's Board and management team; (2) directors' term limits; (3) continued selection of E&Y as the Company's independent auditor; (4) the Company's internal controls; and (5) executive compensation. *Id.* at ¶¶ 93-116, 206-15. According to Plaintiffs, the Proxies contained material misstatements and omissions and were misleading because although the Individual Defendants allegedly asserted their adherence to "diversity," they were not in fact so committed. *Id.* at ¶ 4, 7, 8. Plaintiffs also allege that the Individual Defendants failed to disclose that the reason behind the lack of director term limits is to keep "Black, Latinx, and other underrepresented individuals off of the Board," *Id.* at ¶¶ 13.[15] Plaintiffs summarily allege that because of the Alleged Misconduct, OPKO "has lost and expended and will lose and expend millions of dollars." *Id.* at ¶ 14, 117.

Plaintiffs' allegations are deficient. Their claims rest on subjective criticism and conclusory statements, but the Complaint is devoid of particularized facts showing that any challenged statement was false or misleading when made – much less material. Additionally, Plaintiffs come nowhere close to alleging facts establishing that any Individual Defendant acted negligently (let alone with scienter). And Plaintiffs have pled no facts plausibly suggesting that the purported misstatements and omissions proximately caused *any* of the speculative harms alleged.

### 1.   **Plaintiffs Fail to Allege a Material Misstatement or Omission**

Plaintiffs' allegations fail to satisfy this first element. To allege a false or misleading statement, Plaintiffs must plead, with particularity, each alleged misstatement and the reason why it was false or misleading. *Golub v. Gigamon Inc.*, 2019 WL 4168948, at *5 (N.D. Cal. Sept. 3, 2019). A statement is material only if "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

---

[15] Plaintiffs make such inflammatory allegations of institutional racism against the Individual Defendants notwithstanding the fact that certain of the Individual Defendants themselves are minorities and underrepresented individuals.

The statements challenged by Plaintiffs here, as noted above, are much like the challenged statements in the *Facebook* and *Monster* case. The *Facebook* plaintiff contended that statements in the proxies that Facebook is committed to diversity were materially false because Facebook was in fact not committed to diversity. *Facebook*, 2021 WL 1056611, at *9. The court held, among other things, that even under the general rules of pleading (Rule 8(a)), the plaintiff "[did] not plausibly plead a materially false statement because the aspirational assertions in the proxy statements [were] non-actionable…." *Id*. The *Monster* court similarly considered those statements to be "mere puffery [which] do not constitute objectively verifiable statements of fact." *Monster*, 2021 WL 1558940, at *6. Similarly, the identical statements challenged here are inactionable.

***OPKO's Board and Management Team Diversity***. Plaintiffs challenge the aspirational statement in each proxy that "the Board believes it is important for the Board to have diversity of knowledge base, professional experience and skills, and the Corporate Governance and Nominating Committee takes these qualities into account when considering director nominees for recommendation to the Board." Compl. ¶¶ 96, 97, 104, 112. According to Plaintiffs, these statements were false and misleading because the Company had no Black, Latinx, or other underrepresented ethnic minority members on its Board, thereby limiting the Board's diversity of knowledge, experience, and skills, and that OPKO had no Black members in its executive management team. Compl. ¶¶ 97, 105, 113. But, OPKO does in fact have a Latinx member, as well as other ethnic minorities, on its Board. In any event, the statements relied on by Plaintiffs do not on their face require consideration of race or color in making director recommendations, and as such, Plaintiffs' conclusion that this aspirational statement requires racial or ethnic diversity is misguided. Plaintiffs themselves concede the Board's professional diversity. *See* Compl., ¶¶ 19-48. Plaintiffs have alleged no facts to support their assertion that the Corporate Governance and Nominating Committee does not take "diversity of knowledge base, professional experience and skills" into account when considering director nominees for recommendation to the Board.

Plaintiffs further claim that the absence of specific minority groups on the Board and management team shows "explicit or implicit racism and bias at the Company," Compl. ¶¶ 98, 106, 114, and that the absence of director term limits is a ploy to "keep Black, Latinx, and other underrepresented individuals off of the Board." *Id*. at ¶¶ 100, 108, 116. This is outrageous. There is not a shred of evidence to support Plaintiffs' inflammatory assertions. To the contrary, OPKO's current Board and management team consist of at least four women and three men from minority

ethnicities.[16] Jane Hsiao, Alice Yu, Roger J. Medel, and Prem A. Lachman are current directors. A former director, Anthony J. Japour, served on the Board starting January 6, 2020. *See* Exhibit 3, p. 18. There is obviously no ploy to keep underrepresented minorities "off of the Board," and Plaintiffs make no effort – beyond rank repetition – to substantiate their allegations, let alone allege with particularity why the Company's policies and rules or lack of term limits constituted misstatements or omissions.

   ***The Alleged Misstatements And Omissions Are Immaterial As A Matter of Law.*** Plaintiffs' Section 14(a) claim fails for the independent reason that it is based on statements that are immaterial as a matter of law. The challenged statements are largely inactionable corporate optimism. For example, Plaintiffs generally allege misstatements and omissions regarding OPKO's diversity efforts. *See, e.g.*, Compl. ¶¶ 96, 104, 112. "Courts hold that similar statements are non-actionable puffery or aspirational (and hence immaterial)." *Facebook*, 2021 WL 1056611, at *9; *see also Monster*, 2021 WL 1558940, at *6. Indeed, statements about a company's commitment to "a diverse workforce" and "an inclusive and positive working environment" are "precisely the type of 'puffery' that [courts] have consistently held to be inactionable." *Lopez v. Ctpartners Exec. Search, Inc.*, 173 F. Supp. 3d 12, 19, 26-29 (S.D.N.Y. 2016).

   **2. Plaintiffs Fail to Allege That The Proxies Were An "Essential Link" To The Purported Loss-Generating Corporate Action**

   The Complaint also fails to demonstrate that the alleged misstatement or omission in the Proxies were an "essential link in the accomplishment of a transaction proposed in the proxy solicitation." *Kelley v. Rambus, Inc.*, 2008 WL 5170598, at *3 (N.D. Cal. Dec. 9, 2008) (citation omitted). This "essential link requirement can only be established when the proxy statement at issue *directly authorizes* the loss-generating corporate action." (emphasis in original, citation omitted). *Id*. at *7; *In re Paypal*, 2018 WL 466527, at *4. "[D]amages [that] are not a result of the corporate action authorized by the proxy statement . . . are not the type of damages sought to be remedied by Section 14(a)." *Corwin v. Bresler*, 741 F.2d 410, 428 (D.C. Cir. 1984).

   First, Plaintiffs' claims fail because they have not identified any cognizable harm suffered by the Company (*see supra*, Section II.A.1), let alone a harm caused by the Proxies. *In re Verisign, Inc. Deriv. Litig.*, 531 F. Supp. 2d 1173, 1213 (N.D. Cal. 2007) (dismissing Section 14(a) claim

---

[16]  https://www.opko.com/who-we-are/our-leadership/board-of-directors (last visited, May 24, 2021); https://www.opko.com/who-we-are/our-leadership/management-team (last visited, May 24, 2021).

where "plaintiffs fail[ed] to allege any injury suffered as a result of the allegedly misleading proxy statements – that is, [a] direct injury suffered by [defendant] as a corporation as a direct result of the transaction that was at immediate issue in the proxy (election of directors)"). Plaintiffs allege that "[a]s a direct and proximate result of the Individual Defendants' conduct," the Company "has lost and expended, and will lose and expend, many millions of dollars," Compl. ¶ 117, yet they fail to allege any facts establishing any present or future loss of "many millions of dollars." As discussed above, Plaintiffs' only non-speculative allegation of loss is legal fees and related costs in a lawsuit that settled for $18,000. *Id.* at ¶ 118. However, as noted earlier, the BioReference Lawsuit had nothing to do with the allegations in this action against OPKO.

## III.     THE COMPLAINT IS STILL A DEFICIENT SHOTGUN PLEADING

Finally, the Complaint must also be dismissed because it is a shotgun pleading. Notwithstanding the Court's admonishment, Plaintiffs' second claim for alleged violations of Section 14(a) still incorporates by reference all the preceding paragraphs of the Complaint, including allegations of the preceding claim for alleged breach of fiduciary duty. Compl. ¶ 207. Incorporating *all* previous allegations only promotes confusion and chaos. *See Spigot, Inc. v. Hoggatt*, 2020 WL 108905, at *1 (M.D. Fla. Jan. 9, 2020); *zIT Consulting GmbH v. BMC Software, Inc.*, 2016 WL 231215, *2 n.3 (M.D. Fla. Jan. 15, 2016) (noting that the court was obligated to dismiss a shotgun pleading sua sponte). Plaintiffs' shotgun pleading style fails to comport with the federal pleading requirements, and should be dismissed, this time with prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, the Individual Defendants respectfully request that Plaintiffs' Complaint be dismissed in its entirety, with prejudice.

Dated: May 24, 2021

**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida  33131
Tel.: (305) 374-5600
Fax: (305) 374-5095

By: */s/ Brian P. Miller*_____
    Brian P. Miller, Esq.
    Florida Bar No. 0980633
    E-mail: brian.miller@akerman.com
    Samantha J. Kavanaugh, Esq.
    Florida Bar No. 0194662
    E-mail:samantha.kavanaugh@akerman.com

*Counsel for Nominal Defendant OPKO Health, Inc. and Defendants Phillip Frost, Adam Logal, Jane H. Hsiao, Steven D. Rubin, Robert S. Fishel, Richard M. Krasno, Richard A. Lerner, John A. Paganelli, Richard C. Pfenniger, Jr., and Alice Lin-Tsing Yu*